Oyez! Oyez! Oyez! All persons having business before the Honorable, the United States Court of Appeals for the District of Columbia Circuit, are admonished to draw near and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Case number 19-3090, United States of America v. Sylvan D. Abney, AppellantX. Ms. Sheketoff for the Appellant, Mr. Carroll for the Appellee. Hello, Ms. Sheketoff, this is Chief Judge Ernie Lawson. Please proceed, and I'll say to all counsel, we regret that we can't see you in person, but I'm sure you'll understand the circumstances don't permit it, and we thank you all for participating in this fashion in the interest of the health and safety of you and all of us, and hopefully everybody, including your families, are staying safe and healthy. Good morning, Julia Sheketoff for Appellant Sylvan D. Abney. Federal Rule of Criminal Procedure 32.1 guarantees a criminal defendant in a revocation hearing an opportunity to make a statement and present any information and mitigation before he is sentenced. The District Court denied Mr. Abney that opportunity when it refused to allow him to allocate before sentencing. That straightforward error requires resentencing, and because the District Court would clearly have difficulty setting aside its prior judgment about the appropriate sentence here, and in order to preserve the appearance of justice and fairness, this Court should order reassignment to a different judge on remand. There are three issues that the Court must decide in this appeal. First, did Mr. Abney preserve his allocution claim? Rule 51 states, in relevant part, that a party may preserve a claim of error by informing the Court of the action the party wishes the Court to take. That is what Mr. Abney did when he asked the District Court, may I say something? As the government itself admitted, and the Supreme Court reaffirmed in Hoagland-Hernandez v. United States, Rule 51 means what it says, the allocation claim is preserved. The second question is, if Mr. Abney preserves his claim... From the perspective of the way we usually administer the plain error rule, the purpose of having a plain error standard is so a grounds for objection is brought to the judge's attention so that the judge can correct it in real time. And I'm wondering, in this kind of situation, does the request, may I speak, put the judge on notice of the nature of the claim that's being made? And I appreciate you bringing to our attention the Supreme Court's decision in Hoagland-Hernandez, which of course is germane. But one thing I noted in that decision is the way the Court described the preservation there is in terms of whether the claimed error was brought to the Court's attention. And the Court at one point said that in the way that the error was communicated there by telling the judge that the sentence was too long, the Court said that the defense thereby, quote, has thereby informed the Court of a legal error at issue. And here, I'm not sure that saying, may I speak, says here's the legal error at issue or it apprises the trial court in a way that brings the claimed error to the Court's attention. I believe it does. It's not simply here that Mr. Abney asked to speak. It's also the timing of when he asked to speak. He asked to speak before the Court concluded sentencing. In fact, he asked to speak at the moment that the Court was wrapping up his sentence, effectively communicating to the Court that at this point, I haven't gotten to speak yet. I need that chance. I don't think there's anything more he needs to do. Beyond that, this isn't the kind of claim that is a convoluted issue or something that a district court wouldn't be aware of, such that a defendant really needs to explain in detail exactly what his objection is. I think the right of allocution is a bedrock right that every judge knows about. In fact, this judge himself offered Mr. Abney the right of allocution in his original sentencing and his re-sentencing and in the first revocation proceeding in 2017, so he was aware of it. That might well be a reason why the error is plain, because it should be obvious. But I'm not sure that the obviousness of the claimed right is a basis for avoiding the plain error standard altogether. It's usually something that kicks in after plain error applies. I agree with that. I just mean, I think that Mr. Abney's, that the objection itself or the issue is simple enough that Mr. Abney's simple request to speak did put the district court on notice of the nature of his objection in this case. The second question before the court is, if Mr. Abney indeed preserved his claim, is he entitled to re-sentencing? The government doesn't dispute that Rule 32.1 requires an opportunity to allocute before sentencing or that the district court denied Mr. Abney that opportunity, and it doesn't dispute that the remedy for denial of allocution is generally re-sentencing. Its only argument on this point is that re-sentencing is unnecessary here because the district court responded to everything that Mr. Abney said. A review of the transcript disproves that. The district court… Excuse me. They also argue that the language of the two rules is different. My understanding is that the government points to the distinction in the language between the two rules only in the context of arguing that the error isn't plain. In other words, that the government is not arguing… But would you just focus on the difference for me? One of the, the sentencing rule clearly says before posing sentence and the other one doesn't. That's correct. Rule 32 is first extended the right of allocation to a criminal defendant in the sentencing. There was substantial case law and then an amendment to that rule that made clear that the district judge needed to invite the defendant to speak and that he needed to do that before issuing a sentence. Rule 32.1 was adopted to extend the right of allocation that had been well recognized in the context of initial sentencing to the context of revocation proceeding. At that time, it was quite clear and the committee in its notes made clear that the purpose was to move that right which attached before any sentence was imposed in a revocation proceeding. So I don't think it was necessary to include the same amount of detail. Just to back up, the two rules, Rule 32 and Rule 32.1 are different in other ways. You know, 32 is much more detailed that applies to a regular sentencing. There are many more protections for a defendant in that context. So it's not surprising that they're phrased a little bit differently. The government, again, doesn't contest that on the NOVA review or abusive discretion review that the linguistic differences actually make a difference here. And I think they don't. In addition, I think the purpose of the allocation right is quite obvious. It's not something that the drafters of the rule needed, again, to clarify. The entire purpose of an allocation right is to give the defendant a meaningful opportunity to address the court in respect to his sentence, to mitigate the sentence or to present information and mitigation and potentially influence the sentence. And that just doesn't make sense in the absence or after a sentence has already been imposed. Furthermore... Ms. Seketov, this is Judge Pillard. Hi. You argue in your brief relying on various aspects of the proceedings going back to prior sessions with the district judge and quote what you say shows that he would not have an open mind on remand. But why should we consider proceedings prior to this resentencing session? I think there are two separate issues or two separate grounds that we're asking for reassignment on. The first is whether the judge would have difficulty putting out of his mind his already reached decision about what the sentence would be. And with respect to that, we're only relying on what happened in the proceeding below. The argument in our brief and what the argument is here is that the judge made clear that he wasn't able to put aside his already determined view of the sentence when he, after allowing a post-sentencing allocation, didn't consider the sentence and made clear that the sentence had already been imposed and he was just speaking with Mr. Abney to answer his question. With respect to the second thesis for requesting reassignment, that is about the appearance of fairness in the case. And I think in that, with respect to that, it's very fair to look at the entire course of the proceedings in this case and ask whether they raise a question about whether the judge is hostile to Mr. Abney. And I think that they do. I think that the judge's conduct towards Mr. Abney, particularly the change in his treatment of Mr. Abney between the original sentencing and when Mr. Abney won a resentencing on appeal, strongly suggests that there's at least a question about the fairness, the appearance of fairness in this case. So I guess I'm just wondering about the timeliness of raising those concerns that the district judge was, you know, disagreed with the government and with defense counsel on what the sentence should be in light of the legislation and he made that clear on the record. But this is a separate proceeding and the judge expressed concerns about other things like compliance with supervised relief terms and tenacity of Mr. Abney's ability to keep a job and his interactions with his probation officer. So I'm just not sure what appearance the earlier expressed disagreement about the sentence calculation creates with respect to the decision under review here. I don't think it was simply about disagreement in respect to the sentencing calculation. I think the district court displayed significant hostility towards Mr. Abney that he did not have the original sentencing. So for example, at the original sentencing he told Mr. Abney that he was inclined to sentence him between five and ten years. But later he seemed to have completely changed course, forgotten that, and felt that the crime was extremely serious such that, you know, he accused the prosecutor of making a joke by saying that he might seek a time-served sentence after Mr. Abney had already served six years. He changed his position on whether Mr. Abney was entitled to an acceptance of responsibility adjustment in his guidelines calculation. And again, I don't think these go to simply a change in view or a disagreement between the parties in the court. I think they go to the question of whether the district court felt annoyed with Mr. Abney for, you know, reopening the case, for winning on appeal, for getting him reversed. I think, you know, the district court's treatment of Mr. Abney and of the prosecutor in the case in the status hearing following remand by this court and in the sentencing proceedings shows a level of hostility that raises questions about the appearance of fairness in this case. Mr. Sheketoff, thank you. If my colleagues have no further questions at this time, I'll pause for a second just to make sure they don't. Can you hear me now? Yes. Okay, I'm sorry. I just have a question about the timing of all of this. What is the defendant's situation now? The district court sentenced him in November for six more months, so is he in prison now? He is. When is the six months up? I'm not exactly sure. I believe that he was arrested in October, so the end of that period is certainly coming up very quickly, but I don't know the precise date. Well, what are the consequences of this for the court? In the normal course, we might not have an opinion completed and issued for a couple of months, and by that time he'll at least be in his... He likely would. In addition, he has an 18-month term of supervised release, and one of the things he would request or requested is no more supervised release because... Although he didn't object to the halfway house, right? He requested additional time in the halfway house instead of incarceration. I would need to consult with him about whether he objects to... On re-sentencing, he would decide whether he objected to the... Thank you. Ms. Sheketof, you said you had three issues. Did you get a chance to cover your third? I guess that was about the reassignment. Yeah, I covered that with you in response to your question, I think. Yes. Thank you. Okay, good. Thank you, Ms. Sheketof. We'll hear from Mr. Carroll now, and we'll hear from you on rebuttal. Thank you. May it please the court, my name is Ethan Carroll, and I represent the United States. The district court did not plainly err in sentencing an appellant because it gave them an opportunity to make a statement and present any information and mitigation, which is what Rule 32.1 requires. An appellant does have to show plain error. His interruption of the district court after it had announced its intended sentence was insufficient to alert even his counsel of the nature of his objection, let alone put the district court on notice of his wish to allocute before it imposed sentence, which is what Rule 52 requires. Even if an appellant could establish plain error, it isn't an error that affected his substantial rights or requires reversal because this court need not wonder about what he would have said when afforded the opportunity to speak, which again, as Rule 32.1 requires. Can I ask you a question at the outset, Mr. Carroll? Of course. I didn't read anywhere in your brief that you disputed the notion that there was an error or committed error. What we put in the brief was that the court need not decide that question. The government does have an argument that no error was committed here, but we recognize that the… You didn't make that argument, right? We proceeded directly to Part 2 of plain error. That's correct, John. Right, so we don't have an argument before us that an error was committed. So on the question of whether there's an error in waiting until the district court first announced the sentence to have the back and forth that you ultimately rely on or allowing for that back and forth beforehand, you don't dispute that it was an error to wait until after the sentence was imposed to do that. At least I didn't see anywhere in your brief where you dispute that. So where we… There's a footnote where we rely upon… I believe it was Ingrosz-Cruz as well as the Second Circuit's resentencing rule and Margiotti, which is what this court has followed both in… I believe it's Ingrosz-Cruz and then I think it was also Harris, which was a case that occurred a couple of years later. This court has recognized that even if the district court doesn't first permit an appellant to speak and announces its intended sentence first, that that might not necessarily require reversal because a district court can still listen to what an appellant has to say or to what the defendant has to say after announcing its intended sentence. So that was raised in a footnote. Just to be clear, I think that was a footnote, a six-year brief, so we don't ordinarily have arguments put in footnotes, but you put that proposition in a footnote. And is the point of that footnote that there wasn't an error to begin with or that there was an error but it's in some way harmless or non-prejudicial or what were you trying to say in that footnote? So it would be the latter, that even if it was an error, that it's one that was harmless. Right, so then even in the footnote you're not making an argument that there was an error. I'm sorry. That there wasn't an error. I'm sorry. That's correct. Okay. But the government does believe that an appellant has to show plain error in these circumstances because of the nature of his objection if it wasn't one that has complied with this court's requirement of sufficient particularity to put the district court on notice so that it can, in real time, address any issues that an appellant is trying to raise. What more should he have said? So he could have said... What more should he have said? So he could have said that he didn't, that can he have an opportunity to talk before the district court does or actually turning to... What's that different from what he did say? So it didn't alert the district court or even his counsel to the nature of his objection and the basis for my saying that... Why do you say that? Yeah, go ahead. Sure. Go ahead. So if you turn to the trial transcript, looking at page 8, the very bottom of that where Mr. Abney says, may I say something, and you look down literally, I think it's six lines later, Ms. Petras, appellant's trial counsel, is confined with appellants. They had an opportunity to make specific the nature of Mr. Abney's objection. What could be more specific than, may I speak, that's what allocution is? Under the reasoning of Holguin-Hernandez, that would be preserved already. The whole point is not to have to repeat and repeat something that's already in the record. So Holguin-Hernandez doesn't appear to have modified this court's ruling in United States v. Piles, which is a 2017 case of the circuit, where even in Piles, where a defendant stated an argument and mitigation. He had to further object and let the district court know that the nature of his objection was that it had not given fair consideration to that argument. The government's reading of Holguin-Hernandez isn't that any statement is one that's enough to alert a district court to the nature of one's objection. It was that in the context of the parsimony principle upon which that's embedded in the 3553 factors, that in that specific context, that the nature of the defendant's request, which put the court on notice to the basis and law and also the nature of the sentence that he was requesting, which necessarily would have been one that was no longer than necessary to address each of those factors, that in that specific context, the nature of his objection was sufficient to put the court on notice of what he was requesting. Holguin-Hernandez makes that clear when it does refer to the parsimony principle on page 5 of the Circuit Opinion as being determinative of the outcome, and then also on page 4, where it says that the circumstances turn on what a judge would ordinarily understand that a defendant in that circumstance was making the argument. Here, the nature of what Mr. Abney requested wasn't enough to put either his counsel or the district court on notice of the fact that what he was raising wasn't just that he requested an opportunity to speak, which, again, we think would be consistent with Rule 32.1, but also the procedural nature of his objection, which is that he was requesting that opportunity to speak then, before the district court imposed the sentence. So, we do believe that this should be reviewed for plain air. And to turn to the heart of our argument, we do think that under Prongs 3 and 4 of ALANO that reversal is not required here. But can I add something to that? You're not arguing under Prongs 1 and 2. Your argument is exclusively about prejudice and integrity of the proceedings. No, we are arguing under Prongs 2 and have pointed out a number of differences between Rules 32.1 and Rule 32, and we think that those differences make a difference, and any error would not have been a plain one under the text of the rule itself. So, we are making an argument under Prongs 2. I think it's fairly stated in our briefs, and that's why I was turning to Prongs 3 and 4. Just on Prongs 2 for a second. Sure. So, what you think is non-obvious is not that you have to give an opportunity to allocate, right? Of course you have to give an opportunity to allocate. That's correct. So, what you think is non-obvious is that you think what was given here ultimately was an opportunity to allocate, but it was just done after the imposition of sentence? That's correct. It seems to me that if you have to give an opportunity to allocate, it has to be one that's meaningful, in that the judge actually takes into consideration the statement that's being made in the context of deciding what sentence to impose. And it just seems to me that you want some indication that that's what's going on, as opposed to I'm imposing sentence, and then, oh, okay, if you want to say something, go ahead, but without any suggestion or reason to give the defendant an indication or anybody an indication that the statement that's being made, in fact, is being taken into account in determining what the sentence is. As would happen, for example, in some of the cases you cited in your footnote, where the other courts of appeals have suggested that in that kind of situation, the district court should affirmatively indicate that it's reopening the sentencing in light of an error like this, and then the district court is telling everybody, including the defendant and the defendant's counsel, okay, now I'm going to rethink the sentence. Let's start back at ground zero, and I'll hear your statement, and then I'll render sentence anew. Sure. So three points. One, it does, so on page 15 of the trial transcript, the court did engage with Mr. Abney's counsel's request about the halfway house, asked whether he was actually requesting a longer amount of time in the halfway house, and then responded as to why the court did not believe that placement in the halfway house was appropriate. So the court did respond. Point two, it was actually appellant's counsel, not the court, that ultimately stopped appellant from speaking. So the court was continuing to listen to each of the points that Mr. Abney was making. And then in point three. Where are you looking for that, Mr. Carroll, in the transcript, that it was appellant's counsel? Yes, page 14 of the trial transcripts where Ms. Petras said, let me try after Mr. Abney had been speaking to the district court for what looks like some time. So it was Ms. Petras that ultimately stopped Mr. Abney from speaking. And then the next page, the court engaged with Ms. Petras' request for additional time in a halfway house. And that's after the court had said, you can talk to your counsel, you can talk to your counsel about that, you know, to make a request. So I think part of the dynamic there is that the court has decided and is really in the, I mean, one of the ways of reading this transcript is the court is sort of in the nature of, do you have questions about what I've already done as opposed to speak to me so I can frame a sentence in light of what you have to say. And in that regard, you know, after the judge has directed Mr. Abney to speak to his counsel and there's some question about what the defendant's concern is, then Ms. Petras jumps in. And I guess what I'm trying to point out is just that even after that back and forth, that the court was engaging with Ms. Petras about the specific nature of the request on page 15, which indicates that it was still open to hearing from an appellant's position. And I do think it's also worth pointing out that at no point in the proceedings below or on appeal has appellant requested anything other than halfway house placement. The record shows that why the court rejected that request, which was made both by appellant and appellant's counsel before and after the court imposed sentence. And so that brings this case within the kind of cases under prongs three and four, where this court does not have to wonder about what would have happened and the appearances of fairness because appellant was given an opportunity to speak. I'm looking to the fifth, seventh, eighth, and tenth circuits, each of which under either prong three or prong four, takes a look at whether the allocution was considered, whether a defendant had anything further to say, and even on appeal what he proffers he would have requested that was different. And here the only thing that appellant has ever requested is placement in a halfway house. And I've cited those cases. The ones that are closest actually are Legg from the Fifth Circuit, a 2011 opinion, DeBerry from the Seventh Circuit, a 2010 opinion, Thurmond from the Eighth Circuit, a 2019 opinion, and Mencia-Hernandez from the Tenth Circuit, which is a 2014 opinion. If this court had a test of presumed prejudice under prong three, it would have said so in Anderson, which is a 2011 case, which considered an allocution error in an original sentencing. And even in that context, which is much more formal, as even appellant admits by looking at the differences in the two contexts, even in that context that this court looked to was whether the actual course of the proceedings and whether the perspective was communicated. Sorry, was there a question? Mr. Carroll, thank you. I'll ask my colleagues if they have any further questions. If not, we can hear from Ms. Sheketoff on rebuttal. Which was the 2011 case that you referred to? Was that Anderson? Yes, Your Honor. It's Anderson, which is a 2011 case on this court. Okay, thank you, Mr. Carroll. Thank you. Ms. Sheketoff, we'll hear from you in your rebuttal. Thank you. I just wanted to make a few quick points. First, Mr. Carroll argues that the judge explained why he wasn't placing Mr. Abney in a halfway house. I don't think that that's entirely accurate. In fact, what the court responded to is Ms. Petras discussed why Mr. Abney wanted to be placed in a halfway house and then said, I understand the court wants to punish him. And the court said, I'm sure, Ms. Petras, you have a very clear recollection as to why, of how successful he was operating in a halfway house when he was in one. In other words, I would read that to understand that he wants to punish him for failing to be successful in a halfway house as opposed to explaining why a halfway house placement, as opposed to incarceration, or as opposed to simply just keeping him on supervised release as he had been for almost two years, was inappropriate. Also, Mr. Carroll mentioned that the district court listened to Mr. Abney and didn't cut him off. That's not sufficient to cure any violation here, even assuming that that's the relevant test. You have to actually respond to what the defendant says. You have to wipe the slate clean or reconsider the sentence. And if you impose the same sentence, explain why you're adhering to that sentence based on what the defendant actually said. Here, the district court didn't even repeat the sentence at the end of the proceeding. It was clear that when he announced the sentence before allocution, that was the sentence. That was the final sentence, and he did not revisit it. I also wanted to turn just briefly to whether plain error should apply. As Judge Tillard and Judge Cheadle mentioned, I think it doesn't because Mr. Abney did everything he could or everything that would reasonably be expected to put the district court on notice. The government doesn't identify anything more that he could have said to make his objection known except that he could have said, I want to allocute now. I want to allocute before a decision is reached. The timing of when he made that request, I think, communicated that. Can I ask you a question about that, which is suppose what he said was, and I'm obviously reading into this a much greater degree of information than a criminal defendant normally would have, but just bear with me on the hypothetical just for illustration purposes, which is suppose someone says, I don't think I have any entitlement to speak. I'm not aware that I do, but it'd be great if you'd let me talk for a second. And then suppose actually take it out further and just say, because I'd just like to express my sorrow to the victims of the crime. Let's say something like that. And at that point, the district court doesn't have any reason to think that not letting the person speak is an error. It does have indication that the person would like to speak, but doesn't have any indication that not doing so is an error or is being claimed as an error. And so it's not a claimed error in the language of what the Supreme Court said in Holman-Hernandez. Well, the language of Rule 51B says specifically a party may preserve a claim of error by informing the court of the action the party wishes the court to take. It doesn't say that the party, and then it specifies for the party's objection to the court's action and the grounds for that objection. It doesn't specify that when the party is requesting a particular action from the court, it needs to specify the legal right that guarantees him that action. In fact, in Holman-Hernandez itself, the party did not have to say, you know, under 3553A, I am entitled to... Oh, no, you definitely don't need to fight the statute or the rule or anything like that. I don't disagree with you on that. I think the question is whether you're giving the court reason to think that not doing it might be an error. And in Holman-Hernandez, everybody knew it was claimed to be an error because the issue was whether the sentence was too long, and the defense was making the argument that the sentence is too long for the following reasons. And at that point, the court knows, well, someone's telling me that if I don't grant a lower sentence, that this would be wrong. But in our case, I don't know that the judge has put on notice that not granting the request to speak would be wrong, or would be considered by the defense to be wrong. It's true that Mr. Abney didn't say, may I speak, because not letting me speak would be wrong, but I think by making the request of the district court, he's informing the district court that that is what he believes he's entitled to and that that is what... I'm sorry. I didn't mean to interrupt you. Go ahead. And that is what the error... And that is what, if the district court denies, he may complain about. So I want to read just a quote from Holman-Hernandez. It says, by informing the court of the action he wishes the court to take, a party ordinarily brings the court's attention to his objection to a contrary decision. I don't see why this should fall outside of that ordinary rule. Ordinarily, stating what you want is enough, and here I think there's no reason why it wouldn't be enough. To ask more of a full defendant... It's a little complicated here because, in fact, what he wanted was not post-sentencing allocution, but pre-sentencing allocution, and it was only when the district judge had actually imposed the sentence that he realized, well, the train has left. Even assuming that this was an effort to ask for an opportunity to allocate, he's asking for it after the fact. I'm not sure that makes a difference, but in terms of what the district judge is asking about, you know, it seems less like a request to allocate pre-sentence when it's come up after the fact. Well, I disagree with the factual premise. The objection was not made after a sentence was already imposed. The court had begun to impose sentence, but he specifically said, after Mr. Abney interjected, that he was not done with his sentence. And, in fact, after Mr. Abney objected, he imposed an additional condition of supervised release, which was cognitive behavioral therapy, and then explained, you know, that Mr. Abney needed to report to probation within 72 hours. So these are additional requirements on Mr. Abney that were imposed post or after his request to allocate. But even setting that aside, I mean, understanding that a defendant would have difficulty interrupting a district court in the middle of a defendant, you know, Mr. Abney didn't really have an opportunity to object before the district court, you know, began to impose sentence. He didn't know that he wasn't going to be afforded the opportunity to address the court before sentencing. Only once the court began to impose sentence was he aware that, no, this opportunity was not going to be extended to him and that he needed to act in order to obtain it. I just wanted to say, again, that I think asking more of a criminal defendant would be putting a substantial burden on him. I think this is quite analogous to Holden Hernandez in that there, you know, the defendant asked for a lower sentence. Here, the defendant asked to speak. That puts the district court on notice of what the defendant wants, and the defendant does not need to identify the legal basis that entitles him to what he's requested. And then, lastly, if I may, I just wanted to address Pyle's case that the government brought up, which I think simply speaks to the contemporaneousness requirements, that a defendant can't simply, you know, make a general request at the very beginning of a sentencing proceeding and expect that about, you know, considering various arguments, and expect that to put the district court on notice that he may have made an error by failing to adequately address something, you know, an hour later in the sentencing proceeding. Rather, that case discusses or directs the defendant to, you know, make a timely claim, to make a timely objection, but here Mr. Abney did exactly that. And in Pyle's and Mack and the other cases, the government sites, there's no suggestion that the defendant would need to say, you know, I quote-unquote object, rather than, no, I request that you consider this argument at the time that the district court fails to do so. And that's what Mr. Abney did here. Okay. Thank you, Ms. Shekatopoulos. If my colleagues have no further questions, we will thank both you and Mr. Carroll for your arguments this morning, and the case is submitted. Thank you.
judges: Srinivasan, Tatel, Pillard